# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

DAN HAYDEN WILLOUGHBY,           )
                                 )
          Petitioner,            )
                                 )
          v.                     )     CIV 08-02121 PHX GMS (MEA)
                                 )
CHARLES L. RYAN and              )     REPORT AND RECOMMENDATION
ARIZONA ATTORNEY GENERAL,        )
                                 )
          Respondents.           )
_____  )

**TO THE HONORABLE G. MURRAY SNOW:**

On or about November 14, 2008, Petitioner filed a *pro se* petition seeking a writ of habeas corpus pursuant to 42 U.S.C. § 2254.  Petitioner filed an amended petition on March 23, 2009.  See Docket No. 9.  Respondents filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 27) on September 17, 2009.  Petitioner filed a reply to the answer to his petition on November 20, 2009.  See Docket No. 39.

**I Procedural History**

On December 18, 1991, an indictment was returned charging Petitioner with, *inter alia*, one count of conspiracy to commit first degree murder and one count of first degree murder. See Answer, Exh. B at 136-44.  The charges involved the death of Petitioner's wife Patricia ("Trish") in Puerto Penasco (Rocky Point), Mexico, on February 23, 1991.  The case initially

proceeded to trial on the charges of murder and conspiracy to commit murder in 1992.  Petitioner was convicted on the charges of murder and conspiracy to commit murder.  <u>See</u> <u>State v. Willoughby</u>, 181 Ariz. 530, 892 P.2d 1319 (1995).  Petitioner subsequently obtained a new trial in state post-conviction relief proceedings on the ground that his trial counsel was constitutionally ineffective.  <u>See</u> Answer, Exh. JJ at 3.  In late 2001 Petitioner was retried on the charges of murder and conspiracy to commit murder.  Because Petitioner challenges the outcome of his second trial and sentencing, the trial transcripts submitted by Respondents and cited to herein are the transcripts of Petitioner's second trial.  Except as noted infra, the testimony presented at the first and second trials was substantially similar.

Petitioner and his deceased wife married in 1976. Petitioner and his wife had one natural child and adopted two children.  Petitioner's children testified that in late 1989 the relationship between Petitioner and Trish was "hostile," "tense," and "strained."  <u>Id.</u>, Exh. C at 149-50 (Thera Willoughby), Exh. D at 46 (Haydon Willoughby), Exh. H at 12 (Marsha Willoughby).  In October of 1989, Petitioner met Yesenia Patino, a woman who had gender reassignment surgery in 1982. Petitioner and Ms. Patino began an affair in November of 1989. In 1990 Trish became aware of the affair and confronted Ms. Patino.  <u>Id.</u>, Exh. H at 22; Exh. J at 150-52; Exh. U at 127-36.

On June 28, 1990, Petitioner, Ms. Patino, and Jack Mielke had dinner and drinks at a restaurant in Cottonwood,

Arizona.  Id., Exh. P at 110.  Mr. Mielke testified that, at that time, Petitioner said he "just didn't think that there was any way [Trish] would ever give him a divorce," and that Trish "had enough information on him that could result in his being imprisoned."  Id., Exh. P at 111.  Petitioner stated "I think I am going to take her on a trip to Mexico and she will not be returning."  Id., Exh. P at 111.

In July of 1990 Petitioner lost his job.  Id., Exh. J at 102-03.  Ms. Patino testified that in late 1990, Petitioner began discussing various ways to kill Trish.  Id., Exh. S at 58-59.  At one time in November of 1990 Petitioner picked Ms. Patino up and Ms. Patino saw a "steel ball" on the passenger seat of Petitioner's car.  Id., Exh. S at 59.  When Ms. Patino got into the car, Petitioner placed the ball on the passenger side floorboard, below her feet.  Id., Exh. S at 59.  Ms. Patino asked Petitioner what the steel ball was for and Petitioner replied, "That's what I'm going to use to hit Trish."  Id., Exh. S at 59.

Ms. Patino testified Petitioner said that he wanted Ms. Patino involved in the murder because otherwise Ms. Patino could "go tell the police department that I actually am the one that killed Trish.  They will put me in prison and you will be happy with everything and on your own."  Id., Exh. S at 61.  Petitioner told Ms. Patino that she had to help him "by making the murder look like a robbery."  Id., Exh. S at 61.  Ms. Patino testified Petitioner said that he wanted to personally "kill Trish" because she had "been a bitch" and he couldn't "stand her

any more." <u>Id.</u>, Exh. S at 63.

In late November of 1990 Petitioner contacted a property rental agent inquiring about a vacation rental home in the area of Puerto Penasco ("Rocky Point"), in Mexico. <u>Id.</u>, Exh. P at 181-85. The rental agent testified Petitioner booked a house for February 22 and 23, 1991. <u>Id.</u>, Exh. P at 181-85. On Christmas morning in 1990 Petitioner "gave" his family the gift of a Rocky Point vacation. <u>Id.</u>, Exh. C at 155, Exh. H at 29-30. Initially, neither Trish nor Marsha, Petitioner and Trish's adopted daughter (who was seventeen years of age at that time), wanted to go to Rocky Point. Exh. C at 156, Exh. H at 29.[1]

Petitioner and his family traveled to Rocky Point on the weekend of February 22, 1991. On the afternoon of February 23, 1991, Petitioner and the three children left Trish alone at the rental property to go sight-seeing. <u>Id.</u>, Exh. D at 59-60, Exh. H at 43-49. Marsha testified at Petitioner's trial that, after the children were in the car, Petitioner went back into the rental house where Trish was alone, and then came back out to the car. <u>Id.</u>, Exh. H at 45-49.

Ms. Patino testified at Petitioner's trial that, on the afternoon of February 23, 1991, she went to the rental house in

---

[1] Two witnesses testified that Trish had repeatedly stated she did not like Mexico. Answer, Exh. K at 159; Exh. M at 55. Additionally, testimony was introduced relating to a possible financial motive for the crime, including testimony about a successful business owned by Trish and her mother and various life insurance policies purchased by Trish and Petitioner and the business. <u>Id.</u>, Exh. M at 41-42; Exh. N at 130-34; Exh. O at 19, 130-31; Exh. P at 26-37.

Rocky Point, as arranged with Petitioner, and found Trish "practically dead" on a bed in the house with a bloody towel wrapped around her head. Id., Exh. T at 39-40. Ms. Patino testified that she stabbed Trish with a knife from the kitchen of the rental house. Id., Exh. T at 41, Exh. C at 84, Exh. U at 24. The afternoon of February 23, 1991, when they returned from their sight-seeing excursion, Trish's children found her lying on a bed in the rental home with a knife protruding from her head. Id., Exh. C at 164, Exh. D at 65; Exh. H at 55-56, 57-58.

An ambulance arrived at the rental home. An American physician vacationing in Rocky Point with his family testified that he saw the ambulance and went to assist. Id., Exh. C at 79-81. The physician testified that he found Trish still breathing but that she had lost a great deal of blood. Id., Exh. C at 83-84, 88-89, 90-91. Petitioner and the children followed the ambulance carrying Trish to the local hospital, where Petitioner informed the children that their mother was dead. Id., Exh. H at 63-64.

Petitioner was temporarily detained by the Mexican police on February 24, 1991. Id., Exh. C at 74, 78-79, 80-81. United States and Arizona authorities traveled to Puerto Penasco to investigate Trish's death on March 4, 1991. Id., Exh. F at 16-18, 59, 61-62, 82, 121, Exh. L at 87. Ms. Patino's fingerprints were found at the crime scene. Id., Exh. G at 72-73, 76.

In June 1991, Trish's body was exhumed and the Maricopa County Medical Examiner ("ME") performed an autopsy. Id., Exh.

G at 89.   The ME determined that Trish died as the result of "multiple blunt force injuries to the head" and that the stab wounds were not fatal.   Id., Exh. G at 89, 91-92.   At Petitioner's trial the doctor testified there were at least nine blows to the head, concentrated on the right side of the head, and that Trish likely lost consciousness after the first blow. Id., Exh. G at 99, 110-11, 130.   The doctor testified a knife could not have caused the injuries that caused Trish's death. Id., Exh. G at 109.   The doctor further testified that one of the blunt force injuries could possibly have been caused by a "spherical kind of object," and that the other injuries were "just too linear" to have been caused by a spherical object. Id., Exh. G at 121-22, 125.

Ms. Patino was arrested in Mazatlan, Mexico, on December 6, 1991, and charged with crimes relating to Trish's murder by the Mexican authorities.   Id., Exh. R at 104-05. Eventually Ms. Patino entered into an agreement with the Arizona Attorney General to testify against Petitioner at his criminal trial for Trish's murder.   Id., Exh. S at 10-12.   In exchange for testifying against Petitioner, Ms. Patino was to receive dismissal of the charges against her in Arizona and a recommendation by the Arizona Attorney General that she receive a reduced sentence in Mexico.   Id., Exh. R at 115-16, 153; Exh. U at 178-79.   Petitioner was also taken into custody in December 1991.   Id., Exh. L at 88.

At the conclusion of his first trial in 1992 Petitioner was convicted on both counts charged.   Petitioner was sentenced

to death pursuant to his conviction for first degree murder and to a term of life imprisonment pursuant to his conviction for conspiracy to commit murder.   See Arizona v. Willoughby, 181 Ariz. 530, 892 P.2d 1319 (1995).

After Petitioner's first trial, Ms. Patino received a "lengthy prison sentence" in Mexico, despite the State of Arizona's recommendation for leniency.   Id., Exh. U at 179-80, 195-96.   Ms. Patino became extremely angry at the State of Arizona, particularly Assistant Attorney General Steve Mitchell. Id., Exh. U 178-80, 201.   In 1995 Ms. Patino recanted the testimony given at Petitioner's first trial and claimed that she alone had killed Trish.   Id., Exh. U at 178, 201; Exh. V at 11-12.   At Petitioner's second trial in October and November of 2001, Ms. Patino recanted her 1995 recantation.   Id., Exh. U at 175-78.

As noted supra, after his first trial and sentencing Petitioner filed a state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, asserting his counsel was unconstitutionally ineffective.   As a result of this Rule 32 action, Petitioner was granted a new trial.   See Answer, Exh. JJ at 3.   The state withdrew its request for imposition of the death penalty prior to Petitioner's second trial.   At the second trial the testimony and evidence presented was essentially the same as at the first trial.   However, at Petitioner's second trial his adopted daughter Marsha testified differently than she had at the first trial.   Id., Exh. H at 88-100.

The jury was instructed on November 14, 2001, and deliberations began that afternoon.  *Id.*, Exh. BB.  On the morning of November 16, 2001, the jury returned with a verdict.  *Id.*, Exh. DD.  Petitioner was convicted as charged.  *See id.*, Exh. DD at 3-4.  On January 15, 2002, Petitioner was sentenced to consecutive terms of life imprisonment with no possibility of release for 25 years on both counts of conviction.  *See id.*, Exh. FF at 60-61.

Petitioner took a direct appeal of his convictions and sentences upon retrial.  *See id.*, Exh. II.  In his direct appeal Petitioner alleged a high percentage of the jury veniremen were improperly dismissed and that the trial court erred by failing to strike a particular juror.  *See id.*, Exh. II.  Petitioner also alleged the trial court erred in the admission of testimony and evidence and that the verdicts were improperly "coerced" by the trial judge.  *See id.*, Exh. II.  In his direct appeal Petitioner also maintained the trial court erred by denying a "Willits" instruction and that the "Portillo Reasonable Doubt Instruction" unconstitutionally shifted the burden of proof to the defense.  *See id.*, Exh. II  Petitioner further argued that the imposition of consecutive sentences upon retrial was improper.  *See id.*, Exh. II.

The Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a memorandum decision issued December 11, 2003.  *See id.*, Exh. JJ.  Petitioner sought review by the Arizona Supreme Court, raising four of the eight claims raised to the Court of Appeals. *See id.*, Exh. KK.  The Arizona

-8-

Supreme Court denied relief in a decision issued July 1, 2004. See id., Exh. LL.

Petitioner filed an action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure in Maricopa County Superior Court on July 27, 2004. See id., Exh. MM. Petitioner, through counsel, raised the following claims in this Rule 32 action: (1) his trial counsel were ineffective because they failed to call an expert witness regarding the reliability of "coerced confessions"; (2) his trial counsel were unconstitutionally ineffective because they advised Petitioner not testify at his trial; (3) his trial counsel were ineffective because counsel filed a motion for a new trial which was deemed untimely; and (4) the sentence imposed for first degree murder was "illegal or imposed in an illegal manner" because the sentencing court did not limit its consideration to the aggravating circumstances in Arizona Revised Statutes Annotated § 13-703(F). Id., Exh. NN at 4-7.

The state trial court conducted an evidentiary hearing in Petitioner's Rule 32 proceedings on June 2, 2006. See id., Exh. GG. On June 5, 2006, the trial court issued a minute entry denying relief. See id., Exh. OO. The trial court found Petitioner's illegal sentence claim was procedurally precluded because it could have been raised on direct appeal but was not raised in the direct appeal. See id., Exh. OO. The trial court also rejected Petitioner's ineffective assistance of counsel claims on the merits. See id., Exh. OO. Petitioner sought review of this decision by the Arizona Court of Appeals. See

id., Exh. PP. The appellate court denied review on November 30, 2007. See id., Exh. QQ. Petitioner did not seek review of this decision by the Arizona Supreme Court.

In his federal habeas action Petitioner asserts his sentence was unlawful pursuant to Arizona Revised Statutes § 13-703. Petitioner also maintains that the guilty verdicts were coerced and the trial judge abused his discretion in not excusing two jurors. Petitioner further contends the trial court erred by failing to give a "Willits" instruction and that the Portillo reasonable doubt instruction unconstitutionally shifted the burden of proof. Petitioner also contends the trial court erred by admitting "the exemplar Mace" into evidence. Petitioner also alleges the state jury commissioner illegally excused potential jurors. Petitioner argues his sentences violate Apprendi v. Washington, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004). Petitioner contends the trial court erred by precluding the use of prior inconsistent statements by Ms. Patino, his alleged co-conspirator, to discredit her testimony.

Petitioner also alleges his trial counsel's performance was unconstitutionally ineffective because counsel failed to call Petitioner to testify at trial after having "rehearsed" Petitioner's testimony. Petitioner asserts his trial counsel was ineffective because there was "a clear Conflict of Interest existed with trial counsel Alan Simpson, lead counsel." Petitioner also alleges his trial counsel was ineffective because he failed to call an expert witness and because counsel

failed to timely file a motion for new trial.

## II Analysis

### A. Exhaustion and procedural default

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29-30, 124 S. Ct. 1347, 1349-50 (2004); Robinson v. Schriro, 595 F.3d 1096, 1100-01 (9th Cir. 2010), petition for cert. filed, 79 U.S.L.W. 3054 (U.S. June 30, 2010)(No. 10-34); Scott v. Schriro, 567 F.3d 573, 582 (9th Cir.), cert. denied, 130 S. Ct. 1014 (2009).

The Ninth Circuit Court of Appeals has concluded that, in cases arising in Arizona in which the sentence imposed is not a capital sentence, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Paige v. Schriro, 648 F. Supp. 2d 1151, 1168-69 (D. Ariz. 2009); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007). At the conclusion of his second trial and sentencing Petitioner did not

face a capital sentence.   Accordingly, any claim presented to the Arizona Court of Appeals after Petitioner's second trial in Petitioner's direct appeal or in his Rule 32 action was properly exhausted.   See Paige, 648 F. Supp. 2d at 1168-69; Date v. Schriro, 619 F. Supp. 2d 736, 762-63 (D. Ariz. 2006).

To satisfy the "fair presentment" prong of the exhaustion requirement the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001).   See also Scott, 567 F.3d at 582; Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003).   The petitioner must present to the state courts the "substantial equivalent" of the habeas claim presented in federal court.   Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513-14 (1971); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009), cert. denied, 130 S. Ct. 3412 (2010).

In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors.   See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004).   Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court.   See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.

-12-

Full and fair presentation requires a petitioner to have presented the substance of his federal habeas claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. See Scott, 567 F.3d at 582; Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007). Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277-78, 92 S. Ct. at 512-13, they must do more than present the facts necessary to support the federal claim. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982). General and conclusory references to "due process" in a state court pleading do not suffice to exhaust a claim that the petitioner's federal constitutional rights were violated. See, e.g., Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2010). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006); Cook v. Schriro, 538 F.3d 1000, 1025-26 (9th Cir. 2008), cert. denied, 129 S. Ct. 1033 (2009). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is

-13-

exhausted by virtue of the petitioner's "procedural default" of the claim.  <u>See</u>, <u>e.g.</u>, <u>Woodford</u>, 548 U.S. at 92-93, 126 S. Ct. at 2387; <u>Cook</u>, 538 F.3d at 1025-26.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  <u>See</u> <u>Cook</u>, 538 F.3d at 1025-26; <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1378 (9th Cir. 1988).  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule.  <u>See</u>, <u>e.g.</u>, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); <u>Ellis v. Armenakis</u>, 222 F.3d 627, 632 (9th Cir. 2000); <u>Szabo v. Walls</u>, 313 F.3d 392, 395 (7th Cir. 2002).

> The doctrine of procedural default provides that a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule.  A state procedural rule is adequate if it is regularly or consistently applied by the state courts and it is independent if it does not depend on a federal constitutional ruling.  Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice.

<u>McNeill v. Polk</u>, 476 F.3d 206, 211 (4th Cir. 2007) (internal citations and quotations omitted).

> We recognize two types of procedural bars: express and implied. An express procedural bar occurs when the petitioner has presented his claim to the state courts and the state courts have relied on a state procedural rule to deny or dismiss the claim. An implied procedural bar, on the other hand, occurs when the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so.

Robinson, 595 F.3d at 1100.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the Arizona Supreme Court in his direct appeal or in his state action for post-conviction relief. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998).

**B. Standard of review regarding exhausted claims**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d) (1994 & Supp. 2010); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).

-15-

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See Miller-El v. Dretke, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Maxwell v. Roe, 606 F.3d 561, 567-68 (9th Cir. 2010); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007), cert. denied, 129 S. Ct. 247 (2008). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982). See also Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009), cert. denied, 130 S. Ct. 1086 (2010).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. See Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000). For example, a state court's decision is considered "contrary to federal law" if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009); Wright v. Van Patten, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008). See also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008);

Bledsoe v. Bruce, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Murdoch v. Castro, 609 F.3d 983, 990-91 (9th Cir. 2010) (en banc); Vasquez, 572 F.3d at 1035-38; Cook, 538 F.3d at 1015. However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. Williams, 529 U.S. at 409, 120 S. Ct. at 1521; Carey, 549 U.S. at 74-75, 127 S. Ct. at 653. An unreasonable application of law is different from an incorrect one. See Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002); Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005).

Furthermore, only United States Supreme Court holdings, and not dicta or concurring opinions, at the time of the state court's decision are the source of "clearly established federal law" for the purpose of the "unreasonable application" prong of federal habeas review. Williams, 529 U.S. at 412, 120 S. Ct. at 1523; Carey, 549 U.S. at 74, 127 S. Ct. at 653; Ponce v. Felker, 606 F.3d 596, 599 (9th Cir. 2010), petition for cert. filed No. 10-6113 (Aug. 23, 2010); Plumlee v. Masto, 512 F.3d 1204, 1209-10 (9th Cir. 2008), cert. denied, 125 S. Ct. 2885 (2009).

If the Supreme Court has not addressed a specific issue in its holdings, the state court's adjudication of the issue cannot be an unreasonable application of clearly established federal law. See Stenson, 504 F.3d at 881, citing Kane v. Garcia Espitia, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006).[2] Stated another way, if the issue raised by the petitioner "is an open question in the Supreme Court's jurisprudence," the Court may not issue a writ of habeas corpus on the basis that the state court unreasonably applied clearly established federal law by rejecting the precise claim presented by the petitioner. Cook, 538 F.3d at 1016; Crater v. Galaza, 491 F.3d 1119, 1123 (9th Cir. 2007), cert. denied, 128 S. Ct. 2961 (2008). The United States Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles, 129 S. Ct. at 1419, citing Wright, 552 U.S. at

---

[2]
The federal appellate courts have split on whether Faretta, which establishes a Sixth Amendment right to self-representation, implies a right of the pro se defendant to have access to a law library.[]. That question cannot be resolved here, however, as it is clear that Faretta says nothing about any specific legal aid that the State owes a pro se criminal defendant. The ... court below therefore erred in holding, based on Faretta, that a violation of a law library access right is a basis for federal habeas relief.
Kane v. Garcia Espitia, 546 U.S. 9, 10-11, 126 S. Ct. 407, 408-09 (2005).

124-25, 128 S. Ct. at 746-47.[3]  See also Vasquez, 572 F.3d at 1038.

The holdings of the Circuit Courts of Appeal are relevant to resolution of a petitioner's habeas claims only to the extent they are useful in deciding whether the law has been clearly established or that the state court decision is an "unreasonable application" of United States Supreme Court precedent, and not with regard to what constitutes a violation of constitutional rights.  See Maxwell, 606 F.3d at 567; Bible v. Ryan, 571 F.3d 860, 870 (9th Cir. 2009), cert. denied, 130 S. Ct. 1745 (2010); Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1172 (9th Cir. 2003).  Compare Smith v. Dinwiddie, 510 F.3d 1180, 1186 (10th Cir. 2007).

Accordingly, a state court decision may be contrary to a Ninth Circuit Court of Appeals' holding without being an unreasonable application of United States Supreme Court precedent.  See Kessee v. Mendoza Powers, 574 F.3d 675, 679 (9th Cir. 2009).  The Ninth Circuit recently held that when a Supreme Court decision does not "squarely address" the issue presented

---

[3]

Our cases provide no categorical answer to this question, and for that matter the several proceedings in this case hardly point toward one. The Wisconsin Court of Appeals held counsel's performance by speaker phone to be constitutionally effective; neither the Magistrate Judge, the District Court, nor the Seventh Circuit disputed this conclusion; and the Seventh Circuit itself stated that "[u]nder Strickland, it seems clear Van Patten would have no viable claim." Deppisch, 434 F.3d, at 1042.

Wright v. Van Patten, 552 U.S. 120, 128 S. Ct. 743, 746-47 (2008).

-19-

by the habeas petitioner, or if the Supreme Court principle does not "clearly extend" to the context of the situation presented by the petitioner, "it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue." Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).[4]

The Court must review the last reasoned state court opinion on the claims raised in the habeas action. See, e.g., Maxwell, 606 F.3d at 568; Vasquez, 572 F.3d at 1035. When there is no "reasoned" state court decision explaining the state's denial of a claim presented in a federal habeas petition, the District Court must perform an independent review of the record to ascertain whether the state court's decision summarily denying the claim was objectively reasonable. See Medley v. Runnels, 506 F.3d 857, 863 & n.3 (9th Cir. 2007), cert. denied, 128 S. Ct. 1878 (2008); Stenson, 504 F.3d at 890; Pham v. Terhune, 400 F.3d 740, 742 (9th Cir. 2005). If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the

_____

[4] If the Court's decisions do provide a "controlling legal standard," Panetti, 127 S. Ct. at 2858, that is applicable to the claims raised by a habeas petitioner without "tailoring or modification" of the standard, the question is then whether the application of that standard was objectively unreasonable, even if the facts of the case at issue are not identical to the Supreme Court precedent. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009).

-20-

state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Panetti v. Quarterman, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59 (2007); Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008); Frantz, 533 F.3d at 736-37.  See also Jones v. Ryan, 583 F.3d 626, 640 (9th Cir. 2009); Delgadillo v. Woodford, 527 F.3d 919, 924-25 (9th Cir. 2008).

### C. Petitioner's claims for relief

**1. Petitioner contends his sentence was unlawful. Petitioner contends he was sentenced based on aggravating factors that were not included in the governing state statute at the time of his offense.**

Petitioner raised this claim in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure.  The state trial court determined the claim was precluded, i.e., that Petitioner had waived the claim by failing to present the claim in his direct appeal.  See Answer, Exh. OO.

The Court may not grant relief on the merits of the claim because it was not properly exhausted in the state courts. The state court declined to consider the merits of the claim and found relief on the merits of the claim precluded by Petitioner's failure to follow the proper procedure when presenting the claim to the state court.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal

question and adequate to support the judgment." <u>Coleman</u>, 501 U.S. at 729, 111 S. Ct. at 2553-54 (1991). "This rule applies whether the state law ground is substantive or procedural." <u>Id.</u> When a state prisoner has defaulted his federal habeas claims in the state courts pursuant to an "independent and adequate" state procedural rule, federal habeas review of the merits of the claim is barred unless the petitioner can demonstrate cause for their procedural default of the claim and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. <u>Id.</u>, 501 U.S. at 750, 111 S. Ct. at 2565. Accordingly, when a petitioner's federal habeas claim has been waived or precluded by violation of a state procedural rule, it is procedurally defaulted unless the prisoner can demonstrate cause and prejudice. <u>See</u>, <u>e.g.</u>, <u>Cook</u>, 538 F.3d at 1025. An Arizona court's preclusion of relief on a claim pursuant to Arizona Rule of Criminal Procedure 32.2(a)(3), i.e., based on the failure to present the claim at an earlier proceeding, is "independent of federal law because [it does] not depend upon a federal constitutional ruling on the merits." <u>Stewart</u>, 536 U.S. at 860, 122 S. Ct. at 2581-82.

Because the state court declined to consider the merits of the claim based on an independent and adequate state procedural rule, the Court may not consider the merits of the claim absent a showing of cause and prejudice or that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.

> The procedural bar doctrine is a subcategory of the independent and adequate state ground doctrine. See Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998). The purpose of the doctrine is to protect the state's interests by giving it the opportunity to correct its own errors. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 [] (1991). Under this doctrine, a federal court ordinarily will not review a state court ruling if the state court would find that the claim was barred pursuant to an independent and adequate state procedural rule.
> The federal court, however, will review the claim if the petitioner can show either cause and prejudice, see Coleman, 501 U.S. at 750, 111 S.Ct. 2546, or a fundamental miscarriage of justice, see Murray v. Carrier, 477 U.S. 478, 495, 106 S.Ct. 2639, [] (1986), or if the government waived the procedural default, see Franklin v. Johnson, 290 F.3d 1223, 1230, 1233 (9th Cir. 2002).

Robinson, 595 F.3d at 1100 & n.10.

The state's procedural bar satisfies the exhaustion requirement and also provides an independent and adequate state-law basis for upholding a petitioner's convictions and sentences. See Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("...the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons"); Correll v. Stewart, 137 F.3d 1404, 1417 (9th Cir. 1998). Therefore, the Court need not review the merits of Petitioner's procedurally defaulted claim unless he can demonstrate cause for his failure to follow reasonable state procedures for fair presentment of his claims and prejudice arising from his procedural default of the claims. See Murray v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2643

(1986).

"Cause" is a legitimate excuse for the petitioner's procedural default and "prejudice" is actual harm resulting from the alleged constitutional violation.  See Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  To demonstrate cause, a petitioner must show the existence of some external factor which impeded his efforts to comply with the state's procedural rules. See Cook, 538 F.3d at 1027; Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996).  The Supreme Court has explained that "a showing that ... some interference by officials made compliance impracticable would constitute cause under this standard." Murray, 477 U.S. at 488, 106 S. Ct. at 2645.  See also Cook, 538 F.3d at 1027.  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982).  See also Correll, 137 F.3d at 1415-16; Leavitt v. Arave, 383 F.3d 809, 838-39 (9th Cir. 2004).

In his traverse to the response to his habeas petition Petitioner asserts his right to due process was violated by the state court's failure to address this claim on the merits.

Petitioner has not established cause for his procedural default of this habeas claim.  Compare Maples v. Stegall, 340 F.3d 433, 439 (6th Cir. 2003) (concluding that prisoner had established cause for his procedural default of a habeas claim

where prison officials delayed mailing the inmate's state pleadings for five days), and Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) ("It is the fact of nondelivery of a prisoner's timely and properly mailed motion, not the reason for that nondelivery, that constitutes cause for the procedural default."), with Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999), and Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991) (concluding a petitioner's contention he was denied adequate law library facilities and access did not excuse his procedural default of his claims).

To establish prejudice, a petitioner must show that the errors stated in the defaulted claim worked to his actual and substantial disadvantage and infected his trial with constitutional error. See Frady, 456 U.S. at 170, 102 S. Ct. at 1595; Correll, 137 F.3d 1415-16. Petitioner must prove that "but for" the alleged constitutional violation there is a reasonable probability he would not have been convicted of the same crimes. See Ivy, 173 F.3d at 1141. Petitioner has not made this "but for" showing.

Review of the merits of procedurally defaulted habeas claims is also appropriate if the petitioner demonstrates review of the merits of his claim is necessary to prevent a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995); Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649. A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Murray, 477

U.S. at 485-86, 106 S. Ct. at 2649; <u>Thomas v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, Petitioner must establish by clear and convincing evidence that no reasonable juror could have found him guilty of the offense. <u>Schlup</u>, 513 U.S. at 327, 115 S. Ct. at 867; <u>Wildman v. Johnson</u>, 261 F.3d 832, 842-43 (9th Cir. 2001).

Petitioner has not established that no reasonable juror could have found him guilty of the offenses of conspiracy to commit murder and murder absent the alleged error in the state court's consideration of allegedly improper factors when sentencing Petitioner. Accordingly, the Court should not consider the merits of this claim for relief.

**2. Petitioner asserts his trial counsel's performance was unconstitutionally ineffective because they failed to call an expert witness.**

Petitioner raised this claim in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. <u>See</u> Answer, Exh. OO. The state court denied relief on the merits of the claim. That decision was not clearly contrary to nor an unreasonable application of federal law.[5]

To state a claim for ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's

---

[5] Petitioner was represented by two attorneys during his second trial.

-26-

defense.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance.  <u>See</u> <u>id.</u>, 466 U.S. at 687, 104 S. Ct. at 2064.  To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.  <u>See also</u>, <u>e.g.</u>, <u>Martin v. Grosshans</u>, 424 F.3d 588, 592 (7th Cir. 2005).  Additionally, prejudice from counsel's allegedly deficient performance is less likely when the case against the defendant is strong.  <u>See</u>, <u>e.g.</u>, <u>Detrich v. Ryan</u>, ___ F.3d ___, 2010 WL 3274500, at *15-19 (9th Cir.); <u>Avila v. Galaza</u>, 297 F.3d 911, 924 (9th Cir. 2002) (collecting the cases so holding).

        To prevail on the merits of a habeas claim of ineffective assistance of counsel, it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.  "An unreasonable application of federal law is different from an incorrect application of federal law."  <u>Woodford</u>, 537 U.S. at 25, 123 S. Ct. at 360 (internal quotations omitted).  Vague or conclusory claims do not establish evidence sufficient to conclude the state court's decision was clearly contrary to federal law.  <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 205 (9th Cir. 1995); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).

Additionally, defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066.

In denying this claim in Petitioner's Rule 32 action, the state court concluded:

> Defendant failed to prove either prong of the Strickland test. First, this Court cannot conclude that the first prong-that the performance was deficient-was outside that wide range of professionally competent assistance. The Court finds that a reasonable and reasoned basis existed for trial counsel's decision not to call the expert witness. [] Mr. Simpson testified about the courtroom drama surrounding Ms. Patino's testimony. The Court finds that having achieved getting Ms. Patino to admit to having killed the victim by herself, it was reasonable for defense counsel not to call the expert because defense counsel had achieved the objective of having evidence to create and argue reasonable doubt.

Exh. OO at 3.

The Arizona state court's decision in Petitioner's Rule 32 proceedings, that Petitioner was not denied his right to the effective assistance of counsel, was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to federal habeas relief on this claim. Compare Jones v. Ryan, 583 F.3d 626, 640 (9th Cir. 2009) (holding counsel was ineffective for (1) failing to secure the appointment of a mental health expert; (2) failure to timely move for

neurological and neuropsychological testing; and (3) failure to present additional mitigation witnesses and evidence), petition for cert. filed, 78 U.S.L.W. 3652 (Apr. 26, 2010) (No. 09-1314).

**3. Petitioner maintains his trial counsel's performance was unconstitutionally ineffective because counsel failed to file a timely motion for new trial.**

Petitioner raised this claim in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure.   See Answer, Exh. OO.   The state court denied relief on the merits of the claim.   The state court determined there was no showing that any of the claims raised in the untimely motion had merit and, accordingly, that Petitioner was not prejudiced by any deficiency in failing to timely file the motion.

The state court applied the correct test to the claim, i.e., the Strickland standard, and concluded Petitioner had not been prejudiced by the failure to timely file the motion for a new trial.   The state court's decision was not clearly contrary to federal law.   Accordingly, Petitioner is not entitled to habeas relief on this claim.

**4.   Petitioner alleges the guilty verdicts were coerced.**

In his direct appeal Petitioner asserted that the guilty verdicts were coerced by the trial judge.   The Arizona Court of Appeals concluded that Petitioner was not entitled to relief on the merits of this claim.   That decision was not clearly contrary to nor an unreasonable application of federal law.

At the conclusion of the presentation of evidence, closing argument, and instruction, the jurors in Petitioner's second trial began deliberations on the afternoon of November 14, 2001. That afternoon, after the bailiff told the jurors they could leave for the day, the bailiff informed the trial judge that there was a problem because Juror Allison did not want to remain on the jury. After receiving this information, with counsel present telephonically, the trial judge advised Juror Allison to come back the next morning so he could confer with her and counsel. The state trial judge and counsel met with Juror Allison the next morning.

The judge told the juror that he did not want to know anything about the deliberations, about what anyone said, about the votes cast, or any juror's view of the evidence. Juror Allison explained to the court that she had a problem with one of the other jurors. After speaking with Juror Allison about her problem with the other juror and after discussion and argument with counsel, the judge gave the following instruction to all of the assembled jurors:

> THE COURT: Folks, just a couple of additional oral instructions here with regard to deliberations. I just want to -- I just want to relate to you some of the law in this state and that is this: Each juror has a duty to consult with one another, to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. No juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or for the purpose of returning a verdict, but I would ask that you return to the jury room. Keep in mind what I told you about trying to resolve any

> disagreement amongst yourselves without doing violence to your conscience. I'm sure you all understand the gravity of the situation here. Each of you has a duty to deliberate with the other, to discuss, as I said, to consult with one another, to deliberate with a view to reaching agreement if it can be done without. violence or -- without violence to individual judgment. You have a duty to do that and I would ask you to do so, please, and I would ask you to go back to the jury room and continue your deliberations.

Answer, Exh. CC at 25-26.

The jury then resumed its deliberations and the jury did not reach a verdict that day.  The following morning the jury entered guilty verdicts on both counts of the indictment. Answer, Exh. DD (transcript of November 16, 2001).

In his direct appeal Petitioner argued that the giving of the above-quoted instruction constituted fundamental error. The Arizona Court of Appeals determined Petitioner had received a fair trial at the hands of an independent jury, free from intimidation or undue pressure, and denied relief on the merits of the claim.  _Id._, Exh. JJ.  The state appellate court concluded that, as a matter of fact, there was no evidence that the jury had even conducted a vote, was deadlocked, or was 11-1 at the time of the instruction, as Petitioner had asserted. _Id._, Exh. JJ.  After analyzing the totality of the circumstances, including the fact that the trial court had told the jurors four times they should not "do violence" to their conscience, the state appellate court concluded there was no error in giving the instruction.  _Id._, Exh. JJ.

"Any criminal defendant, and especially any capital defendant, being tried by a jury is entitled to the uncoerced verdict of that body." Lowenfield v. Phelps, 484 U.S. 231, 241, 108 S. Ct. 546, 552-53 (1988). Although the Supreme Court has not often dealt with the constitutional dividing line between instructing a jury and coercing it, it is clear that a state trial judge may not cross the "boundary from appropriate encouragement to exercise the duty to deliberate in order to reach a unanimous verdict" and the "forbidden territory of coercing a particular verdict on the basis of the judge's selective view of the evidence." Smith v. Curry, 580 F.3d 1071, 1080 (9th Cir. 2009). See Jenkins v. United States, 380 U.S. 445, 446, 85 S. Ct. 1059, 1060 (1965) (holding reversible error when judge told the jury, "you have got to reach a decision in this case"); Allen v. United States, 164 U.S. 492, 501, 17 S. Ct. 154, 155 (1896) (approving an instruction to a deadlocked jury charging the jurors in the minority to consider the views of the majority and to ask themselves whether their own views were reasonable).

Whether the comments and conduct of the state trial judge infringed a defendant's due process right to an impartial jury and fair trial turns upon whether "the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision." Locks v. Sumner, 703 F.2d 403, 406 (9th Cir. 1983). The trial court's actions and statements must be evaluated in the totality of the circumstances. See Jiminez v. Myers, 40

F.3d 976, 979-80 (9th Cir. 1993); <u>Marsh v. Cupp</u>, 536 F.2d 1287, 1290 (9th Cir. 1976) (holding the test for jury coercion is "'whether in its context and under all the circumstances of this case the statement was coercive'").

The state court's decision was not clearly contrary to nor an unreasonable application of federal law.  The challenged jury instruction encouraged the jurors to consider each other's views and to ask themselves whether their own views were reasonable under the circumstances.  Accordingly, the state court's decision was not clearly contrary to nor an unreasonable application of federal law.  See <u>Brown v. Bradshaw</u>, 531 F.3d 433, 437 (6th Cir. 2008).

**5. Petitioner maintains the trial judge abused his discretion in not excusing two jurors.**

In his direct appeal Petitioner argued that the trial court committed reversible error by failing to excuse two jurors.  Answer, Exh. II.  The Arizona Court of Appeals deferred to the trial court's decision that the two jurors could be fair and impartial and denied relief on the merits of the claim. <u>Id.</u>, Exh. JJ.  This decision was not clearly contrary to nor an unreasonable application of federal law.

During Petitioner's second trial a seated juror became aware that an acquaintance had known Petitioner because the acquaintance was previously Petitioner's Spanish teacher. <u>Id.</u>, Exh. N.  The teacher had commented to the juror that Petitioner was charming and had brought her a present from Mexico. <u>Id.</u>, Exh. N.  The juror car-pooled with two other jurors to whom she

-33-

relayed the teacher's comment.  <u>Id.</u>, Exh. N.   The juror also informed the bailiff about this knowledge, who brought it to the trial court's attention.  <u>Id.</u>, Exh. N at 12.

Upon questioning by the trial court, the juror who initially heard the Spanish teacher's comment about Petitioner indicated she would be prejudiced, and she (Juror Lynch) was excused from the jury.  <u>Id.</u>, Exh. N at 8-12.  Upon questioning by the trial court, the two other jurors to whom the first juror had relayed the Spanish teacher's comment indicated they would not be biased by this knowledge.  <u>Id.</u>, Exh. N at 12-18, 19-26. Nonetheless, defense counsel moved to dismiss one of these jurors, Juror Reid, because the excused juror had told the court Juror Reid had advised her not to disclose the comment from the Spanish teacher to the trial court.  <u>Id.</u>, Exh. N at 34-35.  Upon questioning by the trial court, Juror Reid denied he had so advised Juror Lynch, and the trial court denied the motion to have the second juror dismissed.  <u>Id.</u>, Exh. N at 38-43.

To be entitled to relief on his claim that his constitutional right to an impartial jury was violated by the trial court's decision to allow Juror Reid to deliberate, Petitioner must rebut the state courts' presumptively correct finding that the challenged juror could serve fairly and impartially.  <u>See</u> <u>Greene v. Georgia</u>, 519 U.S. 145, 146, 117 S. Ct. 578, 579 (1996) (holding the federal habeas courts must accord a presumption of correctness to state court's findings of juror bias).  <u>Cf.</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 216, 102 S. Ct. 940, 945 (1982) (holding that the opportunity to show actual

-34-

bias is a sufficient remedy and "a guarantee of a defendant's right to an impartial jury." (internal citations omitted)).  A juror's prejudice may not be presumed.  <u>Cf</u>. <u>Fields v. Brown</u>, 503 F.3d 755, 773-74 (9th Cir. 2007).

Because the contact revealed by the record indicates that the impartiality of the jury's verdict was not affected by the contact, the trial court's denial of Petitioner's claim was neither contrary to  nor an unreasonable application of federal law.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420, 442-44, 120 S. Ct. 1479, 1493-94 (2000) (reiterating that the defendant may establish at an evidentiary hearing that a prospective juror who arguably failed to tell the truth on voir dire was not impartial); <u>Fields v. Brown</u>, 503 F.3d 755, 779-80 (9th Cir. 2007); <u>Sims v. Brown</u>, 425 F.3d 560, 577 (9th Cir. 2005).  Therefore, Petitioner is not entitled to relief on this habeas claim.

**6.   Petitioner contends his convictions violate his federal constitutional rights because the trial court did not give the jury a "Willits" instruction.**

In <u>Arizona v. Willits</u>, 96 Ariz. 184, 190-91, 393 P.2d 274, 277-79 (1964), the Arizona Supreme Court held that if the prosecution has been found to destroy or spoil evidence under its control, the defendant is entitled to an instruction that permits the jury to draw an inference against the state.  To be entitled to a jury instruction pursuant to the holding in <u>Willits</u> a defendant must prove both that the state failed to preserve exculpatory, material, accessible evidence, and resulting prejudice.  <u>See</u> <u>Arizona v. Fulminante</u>, 193 Ariz. 485,

-35-

503, 975 P.2d 75, 93 (1999).

Petitioner raised this claim for federal habeas relief in his direct appeal and the claim was denied on the merits. The state court concluded:

> Defendant requested a Willits instruction because the State failed to collect and/or preserve certain evidence at the crime scene, including photographs of footprints and a drip mark on the wall. [] The trial court refused to give the instruction because there was no showing that the State lost or destroyed evidence. The court further found that the evidence did not have a tendency to exonerate Defendant.

Answer, Exh. JJ at 28.

The Court's review of the state court's failure to give a jury instruction is limited to a determination of whether the failure so infected the entire trial that the defendant was deprived of his right to a fair trial. See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). Because the omission of an instruction is less likely to be prejudicial than a misstatement of the law, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy" burden. See Henderson v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977). The "failure" to give a Willits instruction did not violate Petitioner's right to a fair trial.

The Due Process Clause of the Fourteenth Amendment imposes a duty on the state to preserve evidence that "might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488, 104 S. Ct. 2528, 2534 (1984). Under the Trombetta standard, "evidence must both

possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Id.</u>, 467 U.S. at 489, 104 S. Ct. at 2535. To establish a due process violation when the government fails to preserve evidence that is only potentially exculpatory, the petitioner must demonstrate that the government acted in bad faith. <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58, 109 S. Ct. 333, 337 (1988).

Petitioner has not established that any uncollected evidence was exculpatory or that the government acted in bad faith. <u>See</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 625-26 (9th Cir. 1997); <u>Mitchell v. Goldsmith</u>, 878 F.2d 319, 322 (9th Cir. 1989). The Due Process Clause does not impose on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." <u>Youngblood</u>, 488 U.S. at 58, 109 S. Ct. at 337. Petitioner has not met the "heavy burden" of showing that the omission of a Willits instruction deprived him of a fair trial. Accordingly, the state court's decision was not clearly contrary to federal law and Petitioner is not entitled to habeas relief on this claim.

**7. Petitioner asserts the "Portillo" jury instruction regarding reasonable doubt shifted the burden of proof to the defense, in violation of his federal constitutional rights.**

Petitioner raised his sixth claim for habeas relief in his direct appeal. The Arizona Court of Appeals denied the claim on the merits. In his traverse Petitioner states that he

is "withdrawing" the claim.

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." Carella v. California, 491 U.S. 263, 265, 104 S. Ct. 2419, 2420 (1989) (citation omitted). "Jury instructions relieving States of this burden violate a defendant's due process rights." Id. (citations omitted). "Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt." Gibson v. Ortiz, 387 F.3d 812, 821 (9th Cir. 2004), citing Victor v. Nebraska, 511 U.S. 1, 5, 114 S. Ct. 1239, 1242-43 (1994).

The Arizona courts' Portillo instruction and the instruction given in this case are nearly a verbatim copy of the pattern jury instruction on reasonable doubt adopted by the Federal Judicial Center. See Arizona v. Van Adams, 194 Ariz. 408, 418, 984 P.2d 16, 26 (1999); Victor, 511 U.S. at 27, 114 S. Ct. at 1253 (Ginsburg, J., concurring) (citing approvingly Federal Judicial Center, Pattern Criminal Jury Instructions, at 17-18 (instruction 21)). Accordingly, the state court's decision denying relief on the merits of this claim was not clearly contrary to federal law and Petitioner is not entitled to habeas relief on the merits of this claim. Additionally, Petitioner has waived any potential error by withdrawing this

claim.

**8. Petitioner contends his trial counsel's performance was unconstitutionally ineffective because counsel did not call Petitioner to testify at trial after having "rehearsed" Petitioner's testimony.**

Petitioner raised this claim in his state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure.  The state court denied relief on the merits of the claim.  After conducting an evidentiary hearing, the state court determined:

> Based on the evidence that the Court finds credible, the Court finds as follows:
> 1. Defendant never specifically instructed counsel that he wanted to testify.
> 2. Defendant never expressed a strong desire to testify either before trial or after Ms. Patino testified. He told his counsel that he would follow counsel's advice regarding whether he should testify.
> 3. Both of Defendant's attorneys recommended that Defendant not testify. Defendant was "comfortable" with the defense team's consensus opinion that he not testify.
> 4. Counsels recommendation that Defendant not testify had a reasonable and reasoned basis. Some of those reasons are:
> If Defendant had testified, he would have called ten or eleven other witnesses liars. Defendant doing that during this hearing had an impact on this Court and surely would have had a similar, if not more powerful impact on the jury. There is an old saying among trial lawyers that when one starts throwing mud around the courtroom, some of that mud will likely land on you. It was not unreasonable to limit the mudslinging to avoid the risk of blow back onto Defendant as occurred to some extent during this hearing.
> The defense had evidence to argue reasonable doubt without Defendant's testimony-the love note in the casket, the improbability of arranging the meeting and Ms. Patino's in-court confession. Putting Defendant on the stand and having his credibility seriously challenged would only have diminished the

1
2
3
4
5
6
7
8
9
10
11
12
13
14

> usefulness of this other evidence in arguing
> reasonable doubt.
> As noted above, Defendant's lack of
> credibility would have been highlighted
> during cross-examination. Mr. Simpson
> recognized that for Defendant to testify, he
> would have had to address many "issues of
> deception" that were present" at virtually
> every turn" and that Defendant had "no
> satisfactory answers to those problems."
> Putting Defendant on the stand would have
> given the State an opportunity to review all
> of the adverse testimony given over the prior
> six weeks at a time close to when the jury
> would retire to deliberate. Avoiding that
> opportunity was reasonable from defense
> counsels' perspective.
> ...
> 8. Defendant was given the choice to testify
> and Defendant chose to follow his counsel's
> advice not to testify.
> Based on those findings, the Court finds and
> concludes that trial counsel's decision to
> recommend that Defendant not testify was not
> below the objective standards of
> reasonableness.....

15  Exh. OO at 4-5.

16      The state court's application of <u>Strickland</u> to the

17  merits of this claim was not clearly contrary to federal law. In

18  <u>Strickland</u> the Supreme Court stated that "strategic choices made

19  after thorough investigation of law and facts relevant to

20  plausible options are *virtually unchallengeable*...." <u>Id.</u>, 466

21  U.S. at 690-91, 104 S. Ct. at 2066 (emphasis added). The state

22  court found that counsel's challenged decision regarding

23  Petitioner taking the stand was not deficient but rather that it

24  was a reasoned and reasonable strategic decision.

25      Because the state court's decision was not contrary to

26  clearly established federal law, or one involving an

27  unreasonable application of clearly established federal law, or

28                              -40-

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and Petitioner is not entitled to federal habeas relief on his claim that he was deprived of the effective assistance of counsel.

**9.    Petitioner asserts his sentences violate the doctrines stated in <u>Apprendi v. Washington</u> and <u>Blakely v. Washington</u>.**

Petitioner did not exhaust an <u>Apprendi</u> claim nor a <u>Blakely</u> claim in the state courts by presenting a <u>Blakely</u> or <u>Apprendi</u> claim in his direct appeal or in his Rule 32 action. In his traverse to the answer to his petition, Petitioner states he is "withdrawing" this claim from his habeas action.

Petitioner has not established cause for his procedural default of some of his federal habeas claims in the state courts.  Under the "cause and prejudice" test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules.  <u>See</u> <u>Moorman v. Schriro</u>, 426 F.3d 1044, 1058 (9th Cir. 2005).  To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170, 102 S. Ct. at 1595.  <u>See also</u> <u>Correll</u>, 137 F.3d at 1415-16.  Petitioner has not shown cause and prejudice regarding this procedurally defaulted claim and, accordingly, the court should not consider the merits of the claim. Additionally, Petitioner has waived any potential error by withdrawing this claim.

**10. Petitioner maintains the trial judge erred by precluding the use of prior inconsistent statements by Ms. Patino.**

Petitioner raised this claim in his direct appeal. The state appellate court denied relief on the merits of the claim. The Arizona Court of Appeals determined the claim presented the question of whether the trial court had applied the correct state evidentiary rule. The appellate court concluded the trial court did not abuse its discretion in precluding the testimony Petitioner asserts should have been admitted. Additionally, the appellate court determined that any possible error in not admitting the evidence did not affect the jury's verdicts because the jury was well-aware that Ms. Patino had offered inconsistent statements throughout the first and second trial and prior to and in between the trials.

During Petitioner's second trial, the trial court excluded some impeachment evidence regarding Ms. Patino, but did allow the introduction of other impeachment evidence. The evidence that was excluded was excluded because other inconsistent statements were introduced as impeachment evidence and because the evidence was not timely disclosed to the prosecution.[6]

---

[6] Prior to trial the state moved to compel the disclosure of both a taped conversation between Ms. Patino's brother and Petitioner's previous defense counsel, Mr. Ochoa, and a taped conversation between Petitioner's then defense counsel and Ms. Patino. The prosecutor indicated that Ms. Patino's inconsistent statements were hampering the prosecution. All parties and the trial court indicated that at that time it was not clear if Ms. Patino would testify at all at the second trial or how she might testify. The state trial court granted the motion because it found "everybody needs to be aware of everything she said to everybody...." and that sorting

In his direct appeal Petitioner argued the trial court abused its discretion in precluding the use of the transcripts to impeach Ms. Patino's testimony.

In denying the claim the state appellate court noted:

> During cross-examination [at the second trial], Yesenia partially recanted some of her testimony at the first trial and her testimony on direct examination during the second trial, claiming that she alone killed Trish. However, she also testified that she did not kill Trish alone, but merely admitted that she told defense counsel and an investigator that she did so during an interview prior to the second trial. During redirect examination, she testified that what she testified to during cross-examination was what she told defense counsel and others prior to the second trial and not what actually happened.

Exh. JJ at 16 n.5. The state court determined that because of the unique posture of the case and the specific disclosure requirement issued by the trial court, "Because defense counsel failed to provide the prosecutor with all of Ms. Patino's statements prior to trial, the trial court was well within its discretion in precluding the use of some of them at trial." Exh. JJ at 18.

A defendant's due process rights are violated by the exclusion of evidence if the precluded evidence, if introduced, would have created "a reasonable doubt that did not exist

_____

out Ms. Patino's statements was the province of the jury. The state trial court found that, given the number of conflicting statements made by Ms. Patino, it was impossible to know if the compelled statements could be considered "inconsistent." Accordingly, the trial court ordered both parties to disclose to the other every prior statement made by Ms. Patino within that party's possession. *See* Answer, Exh. JJ at 13-19.

-43-

without the evidence." Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997) (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 868, 102 S. Ct. 3440, 3447 (1982)); Patton v. Mullin, 425 F.3d 788, 798 (10th Cir. 2005).

To be entitled to habeas relief on a claim or erroneous exclusion of evidence, the petitioner must demonstrate the error had a substantial and injurious effect in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S. Ct. 1710, 1721-22 (1993); Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); Cummings v. Adams, 172 Fed. App. 188, 190 (9th Cir. 2006); Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994). Petitioner has not demonstrated that the alleged error had a substantial and injurious effect in the jury reaching the guilty verdicts and, accordingly, he is not entitled to federal habeas relief on this claim.

**11. Petitioner contends the trial court erred by admitting "the exemplar Mace" into evidence.**

Petitioner raised this issue in his direct appeal. The Arizona appellate court stated:

> During Yesenia's redirect examination, the prosecutor showed her three heavy steel baI1s with twelve-inch ropes or tethers attached. These were the same steel balls shown to her at the first trial. The prosecutor asked Yesenia to choose the steel ball (sometimes referred to as a mace) which most closely resembled the steel ball that Yesenia observed in Defendant's vehicle and which Defendant told her was the weapon he would use to kill Trish. Yesenia picked out the black ball, Exhibit 419, as the one most like the one she saw in Defendant's car.

Answer, Exh. JJ at 19.

-44-

1

2

3
          Defendant objected to the admission of the
4
two steel balls that were not similar to the
alleged weapon about which Yesenia testified.
5
He also objected to Exhibit 479 on the ground
that the rope appeared "significantly
6
different" than her description of it and
that it was merely duplicitous of her
7
testimony. The prosecutor advised the court
that the State was offering the steel balls
8
as demonstrative evidence to provide the jury
with a visual idea of the size of the steel
9
ball and rope described by Yesenia during her
testimony. The prosecutor then moved to admit
10
only Exhibit 419. The court overruled
Defendants objection....
11
Dr. Bevel, a forensic consultant, testified
about the nature of the weapon used to kill
12
Trish. He stated that based upon a number of
factors considered, it was highly improbable
13
that a mace with a twelve-inch tether was the
murder weapon- Rather, he opined that the
14
weapon used to kill Trish was a linear
object, such as a tire iron. The medical
15
examiner, Dr. Philip Keen, testified that,
except for one head injury that could have
been caused by a spherical object, it was
very unlikely that a spherical object such as
a steel ball would have caused the other head
injuries.

16 <u>Id.</u>, Exh. JJ at 20.

17        In his direct appeal Petitioner argued that the

18 introduction of Exhibit 419 was in error because the exhibit had

19 no actual connection to the murder and was prejudicial. The

20 state appellate court determined the trial court did not abuse

21 its discretion by admitting the exhibit.

22        A federal court is limited in conducting habeas review

23 to deciding whether a conviction violates the Constitution,

24 laws, or treaties of the United States. 28 U.S.C. § 2254(a)

25 (1994 & Supp. 2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112

26 S. Ct. 475, 480 (1991). A state court's evidentiary ruling does

27 not provide a basis for habeas relief unless the ruling

28

infringed upon a specific federal constitutional right or deprived the petitioner of a fundamentally fair trial as guaranteed by the right to due process of law. See Pulley v. Harris, 465 U.S. 37, 41-42, 104 S. Ct. 871, 874-75 (1984); Briceno v. Scribner, 555 F.3d 1069, 1076-77 (9th Cir. 2009).

To be entitled to habeas relief on this type of claim the petitioner must establish that the admission of the evidence was so arbitrary or prejudicial that it rendered their trial fundamentally unfair. See Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995) (stating this in the context of a claim that the improper admission of the fact of a prior conviction violated the petitioner's federal constitutional right to due process of law). "In essence, the inquiry comes down to the question, whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." Burns v. Clusen, 798 F.2d 931, 943 (7th Cir. 1986). Typically, the federal courts require other evidence of guilt to be overwhelming before concluding a constitutional error was harmless. Mauricio v. Duckworth, 840 F.2d 454, 459 (7th Cir. 1988).

Petitioner has not established that the admission of "the exemplar Mace" evidence was so arbitrary or prejudicial that it rendered his trial fundamentally unfair. The evidence against Petitioner, in addition to Ms. Patino's testimony, was overwhelming. Accordingly, the state court decision regarding admission of the "exemplar Mace" was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not

entitled to habeas relief on the merits of this claim.

**11. Petitioner alleges the jury commissioner illegally excused potential jurors.**

In his direct appeal after his second trial, Petitioner asserted the procedure used by the court to choose the jury venireman was not authorized by rule or statute.[7]  The Arizona Court of Appeals concluded there was no impropriety in the selection of the jury because Petitioner had shown no deficiency in the procedure employed and no prejudice arising from the selection of the jury.  In his traverse Petitioner states he is "withdrawing" this claim from consideration in this habeas action.

Petitioner's right to procedural due process of law does not encompass a particular procedure to choose a jury. Petitioner was not denied his constitutional right to a jury drawn from a fair cross-section of the community.  See Walker v. Goldsmith, 902 F.2d 16, 17 (9th Cir. 1990).  Petitioner is not entitled to a jury of any particular composition provided that the selection process which produced his jury did not operate to systematically exclude distinctive groups in the community from the jury venire.  See Duren v. Missouri, 439 U.S. 357, 358-59, 99 S. Ct. 664, 665-66 (1979); Castaneda v. Partida, 430 U.S.

---

[7] When selecting the jury, the veniremen were informed that the trial was expected to last six or seven weeks and that jurors for whom sitting for that long would pose a hardship would be excused. The potential jurors were provided with forms on which they were allowed to indicate that serving would provide a hardship and the reason for that hardship.

482, 494, 97 S. Ct. 1272, 1280 (1977); <u>Taylor v. Louisiana</u>, 419 U.S. 522, 526-31, 95 S. Ct. 692, 695-98 (1975); <u>Government of Virgin Islands v. Navarro</u>, 513 F.2d 11, 19 (3d Cir. 1975); <u>Krause v. Chartier</u>, 406 F.2d 898, 901 (1st Cir. 1968) (no prejudice found to result from venire consisting entirely of persons with surnames beginning with the letters T through Z). Accordingly, Petitioner has failed to state a claim cognizable in an action for federal habeas relief.   Additionally, Petitioner has waived this claim by withdrawing it from his habeas petition.

**12.   Petitioner contends his trial counsel had a clear conflict of interest, in violation of Petitioner's right to the effective assistance of trial counsel.**

Petitioner states in his traverse to the answer to his amended petition that he is "withdrawing" this ground for relief from consideration.   Because Petitioner has failed to pursue this basis for relief, relief on this claim should be denied.

**III Conclusion**

The state courts' decisions with regard to the federal habeas claims properly exhausted by Petitioner were not clearly contrary to nor an unreasonable application of federal law. Additionally, Petitioner has not shown cause for, nor prejudice arising from his procedural default of some of his federal habeas claims.   Neither has Petitioner established that a fundamental miscarriage of justice will occur if the Court does not consider the merits of his procedurally defaulted claims. Furthermore, Petitioner has indicated in his traverse to the response to his petition that he is "withdrawing" several of his

-48-

claims for federal habeas relief.

**IT IS THEREFORE RECOMMENDED** that Mr. Willoughby's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to

appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 30th day of September, 2010.

_____
Mark E. Aspey
United States Magistrate Judge