**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Dan Hayden Willoughby, | ) | No. CV-08-2121-PHX-GMS |
| Petitioner, | ) | |
| vs. | ) | **ORDER** |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |

Pending before this Court is the Petition for Writ of Habeas Corpus, filed by Petitioner Dan Willoughby. (Doc. 8). On October 1, 2010, Magistrate Judge Mark E. Aspey issued a Report and Recommendation ("R & R") in which he recommended that the Court deny the Petition with prejudice. (Doc. 40). Petitioner filed an objection to the R & R (Doc. 41). For the reasons stated herein, the Court accepts the R & R and denies the petition.

**BACKGROUND**

The Court briefly summarizes the facts, which are set out in the R & R in more detail. In 1991, Petitioner was charged with one count of conspiracy to commit first degree murder and one count of first degree murder. (Doc. 40). The charges involved the death of Petitioner's wife in Puerto Penasco ("Rocky Point"), Mexico, on February 23, 1991. Petitioner was found guilty of both charges. *State v. Willoughby*, 181 Ariz. 530, 892 P.2d 1319 (1995).

After Petitioner's convictions and sentences were affirmed by the Arizona Supreme

Court, Willoughby filed a post-conviction relief ("PCR") action. During those proceedings, the court determined that Petitioner's trial counsel had been constitutionally ineffective. Accordingly, Petitioner was retried on the charges of conspiracy to commit murder and murder in 2001. Willoughby was convicted of both charges and sentenced to consecutive terms of life imprisonment with no possibility of release for 25 years on both counts. Petitioner now challenges aspects of his second trial and sentencing. (Doc. 8).

## STANDARD OF REVIEW

Federal district courts "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].'" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)); *Carrillo-Lozano v. Stolc*, 669 F.Supp.2d 1074, 1076 (D. Ariz. 2009). Under § 636(b)(1) a "district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Reyna-Tapia*, 328 F.3d at 1121.

## DISCUSSION

### I. Illegal Sentence

Petitioner asserts that the consecutive sentences imposed by the trial court were illegal because they were based on "the wrong statutory aggravators." (Doc. 41). Petitioner also asserts that this issue was raised "in his State PCR, before the Arizona Court of Appeals, in his original Petition before this Court, and in his Reply", but has never been addressed by any court. Because he raised the claim several times and the claim has never been substantively addressed, he believes the R & R incorrectly concluded that he had "procedurally defaulted" on this claim, and as a result, it is not reviewable in habeas proceedings. (*Id.*).

Judge Aspey thoroughly analyzed this issue in the R & R. (Doc. 40). As noted in the R & R, although Petitioner raised the issue in his state action for post-conviction relief, Doc. 34, Ex. NN, he was required under Arizona law, ARIZ. R. CRIM. P. 32.2(a)(1), to first raise the issue in his direct appeal. His direct appeal raised several issues pertaining to his claim of an unlawful sentence, including that the trial judge had improperly imposed consecutive, rather than concurrent, terms of imprisonment. (Doc. 33, Ex. II). However, in his Opening

Brief submitted to the Arizona Court of Appeals, Petitioner did not address the issue of whether his sentence was unlawful because it was based on aggravating factors that were not included in the relevant statute at the time of his offense. (*Id.*).[1] As a result, this claim is procedurally defaulted, *see Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) (federal courts will not review a claim that a state court declined to address "because the prisoner had failed to meet a state procedural requirement" where the state procedural rule is "independent and adequate"), and Petitioner was required to demonstrate cause for the procedural default and actual prejudice, *Gray v. Netherland*, 518 U.S. 152, 162 (1996) ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."); *see also Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988) ("If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity.").

In his Objections, Petitioner included a footnote in which he simply cites *State v. Bennett*, 213 Ariz. 562, 146 P.3d 63 (2006), for the proposition that when a defendant states a colorable claim for ineffective assistance of appellate counsel, certain issues may not be "waived." (Doc. 8). However, Plaintiff does not actually allege that his failure to raise this sentencing issue was due to ineffective assistance of appellate counsel. He simply states that the courts have failed to address the issue, the government has not denied that the trial court improperly relied on certain aggravators, and therefore, he is entitled to a hearing on the issue. The Court agrees with Judge Aspey's analysis of the issue and conclusion that Petitioner has neither established cause nor actual prejudice, and thus, this issue will not be reviewed.

---

[1] In his Amended Petition for Writ of Habeas Corpus (Doc. 8), Petitioner marked that he had presented this issue in his direct appeal. However, the record establishes that this issue was not raised until he filed his PCR action. (Doc. 34, Ex. OO).

- 3 -

## II. Ineffective Assistance of Counsel–Failure to Call Expert Witness

In his petition for post-conviction relief, Petitioner asserted a claim of ineffective assistance of counsel based on his defense attorney's decision not to call expert Dr. Thomas Streed to address the issue of coerced confessions. (Doc. 34, Ex. NN). He explained that the State had filed a Motion in Limine to preclude Dr. Streed's testimony, but defense counsel did not respond to the motion or call Dr. Streed as a witness. The trial court rejected Petitioner's claim, concluding that he had not established either prong of the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984),[2] for assessing a defense counsel's performance. (Doc. 34, Ex. OO). Specifically, the PCR trial court noted that defense counsel got the State's witness, Yesenia Patino–Petitioner's girlfriend–to admit to killing the victim by herself, and therefore, "it was reasonable for defense counsel not to call the expert because defense counsel had achieved the objective of having evidence to create and argue reasonable doubt." (*Id.*). Furthermore, "[n]ot calling the expert minimized the risk of allowing the prosecutor the opportunity to spar with the expert regarding [Ms. Patino's] confession to the crime and running the risk that the expert would have undermined Ms. Patino's in-court confession." (*Id.*). Petitioner now objects to Judge Aspey's determination that the state court did not apply the *Strickland* standard in an objectively unreasonable manner. (Doc. 8).

As noted in the R & R, when, as in this case, the petitioner's claim has been adjudicated on the merits in state-court proceedings, it is the petitioner's burden "to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (internal quotation marks omitted); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005) (a federal court may not grant

---

[2] *Strickland* requires the defendant to show that (1) his counsel's performance was deficient to the point that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. 466 U.S. at 687.

- 4 -

1  relief "unless the state court's adjudication of the claim 'resulted in a decision that was
2  contrary to, or involved an unreasonable application of, clearly established Federal law, as
3  determined by the Supreme Court of the United States" (quoting 28 U.S.C. § 2254(d)(1))).
4        Petitioner asserts that under Arizona law, experts may testify to issues regarding a
5  confession and that defense counsel was essentially required to call that expert as a witness
6  to explain the behavior of Ms. Patino, the State's main witness, who changed her testimony
7  on cross and again on re-direct. (Doc. 1). The fact that Arizona law may permit such expert
8  testimony does not establish that the failure to call such a witness constituted a performance
9  that is "'outside the wide range of professionally competent assistance.'" *James v. Borg*, 24
10 F.3d 20, 26 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). The trial court reviewing
11 Petitioner's claim correctly noted that the court's "'scrutiny of [defense] counsel's
12 performance must be highly deferential' . . . [and as such] 'disagreements in trial strategy will
13 not support a claim of ineffective assistance of counsel, provided the challenged conduct had
14 some reasoned basis.'" (Doc. 34, Ex. OO (quoting *State v. Vickers*, 180 Ariz. 521, 526, 885
15 P.2d 1086, 1091 (1994))). The trial court reviewed the record and came to the conclusion that
16 the jury had observed the witness change her testimony several times and determined that it
17 would be reasonable for the defense attorney to conclude that the jury would question the
18 veracity of her testimony. The trial court also noted that there could be strategic reasons for
19 not calling the expert in light of the fact that the witness, Ms. Patino, had claimed on the
20 stand that she alone killed the victim. Given that this Court similarly must apply a "'highly
21 deferential standard for evaluating state-court rulings' in the habeas context", *Moses v.*
22 *Payne*, 555 F.3d 742, 746 (9th Cir. 2009) (quoting *Woodford*, 537 U.S. at 24), the Court
23 agrees with the R & R and concludes that the trial court's decision was not an unreasonable
24 application of federal law.
25       **III. Impasse Instruction**
26       In his direct appeal, Petitioner argued that the guilty verdicts were coerced by the trial
27 judge's use of an "impasse" instruction to deal with reported conflict between two jurors.
28 (Doc. 33, Ex. JJ). The Arizona Court of Appeals determined that the instruction had not

1 coerced the jury into returning a guilty verdict, and therefore, the use of the instruction did
2 not constitute fundamental error. In the R & R, the magistrate judge determined that the court
3 of appeals' decision was not clearly contrary to nor an unreasonable application of federal
4 law. (Doc. 40). Petitioner objects to that determination, stating that the magistrate judge
5 failed to consider certain facts, such as defense counsel's objection to the "impasse"
6 instruction and that the jury had not indicated an impasse, but rather only one juror expressed
7 frustrations about another juror. (Doc. 41). Petitioner contends that the "trial court's
8 premature giving of such an instruction is jury coercion." (*Id.*).

9 This issue was adjudicated on the merits in state court proceedings, and therefore,
10 Petitioner must demonstrate that the decision made by the state court, in this case the Arizona
11 Court of Appeals, was "contrary to, or involved an unreasonable application of, clearly
12 established Federal law, as determined by the Supreme Court of the United States." 28
13 U.S.C. § 2254(d). In his objection, Petitioner cites several cases, including a decision by the
14 Arizona Supreme Court and several from the Seventh Circuit, for the proposition that an
15 "impasse" instruction may not be provided to a non-deadlocked jury. (Doc. 41). He also
16 argues that the "Magistrate's Report fails to discuss this specific fact [that the jury had not
17 indicated it was deadlocked] and corresponding law in its analysis of the 'totality of the
18 circumstances.'" (*Id.*).

19 Petitioner has not demonstrated, or even argued, that the Arizona Court of Appeals'
20 decision is contrary to established federal law as determined by the Supreme Court. In this
21 case, the Arizona Court of Appeals reviewed the issue for fundamental error. The trial judge
22 was informed of a conflict between two jurors. The court of appeals noted that there was "no
23 evidence the jurors had cast any votes or were deadlocked. There was also no evidence
24 concerning the numerical division among the jurors or that the judge knew 'which way the
25 jury was leaning.'" (Doc. 33, Ex. JJ). After discussing the matter with the parties and noting
26 that this was *not* an impasse situation, the judge agreed to instruct the jury at defense
27 counsel's request. Although defense counsel appears to have initially raised concerns about
28 modeling the instruction on the standard impasse instruction under those circumstances,

- 6 -

1 counsel agreed to the final instruction that was given.[3] The court of appeals emphasized that
2 the instruction explained the duty of the jurors to "consult with one another" and "deliberate
3 with a view to reaching an agreement if it can be done without violence to individual
4 judgment." (*Id.*). The jury did not reach a verdict that day, but returned guilty verdicts on
5 both counts the following morning. Under these circumstances, the court of appeals
6 concluded that the instruction did not have a coercive effect. *Cf. Jenkins v. United States*, 380
7 U.S. 445, 446 (1965) (concluding that the judge's statement–"You have got to reach a
8 decision in this case"–had a coercive effect).

9 After noting the above facts and reasoning, Judge Aspey concluded that the state
10 court's determination, based on the totality of the circumstances, was not an unreasonable
11 application of the law. Petitioner has not met his burden of demonstrating otherwise, and
12 therefore the Court will not grant relief based on this issue.

**IV. Ineffective Assistance of Counsel–Failure to Call Defendant to Testify**

Petitioner objects to the R & R's recommendation that Petitioner's claim be denied
because the state court's determination in the PCR proceedings was not contrary to federal
law. (Doc. 40). Petitioner asserts that Judge Aspey should have analyzed the trial court's
findings to determine whether the trial court correctly concluded that defense counsel's
strategy had a "reasoned basis." (Doc. 41). In his objections, Petitioner reviews the facts from
the PCR proceedings and argues that because defense counsel's decision not to have
Willoughby testify appears to have been based on a gut feeling, there could be no "reasoned
basis" for that decision. Further, he rejects the trial court's conclusions that the decision
could have been based on defense counsel's determination that it would have been worse to
put Willoughby on the stand given that what he would testify to would contradict the
testimony of a number of other witnesses and that he may have come across poorly on the
stand.

---

[3] Although Petitioner now asserts that defense counsel objected to the instruction given by the court, the Arizona Court of Appeals noted in its decision that Petitioner "acknowledges that counsel failed to object to the instruction". (Doc. 33, Ex. JJ).

- 7 -

As noted above, under *Strickland*, Petitioner had the burden of showing that defense counsel's performance fell below an objective standard of reasonable performance and that such performance prejudiced him, meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial." 466 U.S. at 687. The trial court concluded that Willoughby failed to prove either component of an ineffective assistance of counsel claim. (Doc. 34, Ex. OO). In both his Petition as well as his objections, Petitioner focused on the reasonableness of defense counsel's performance, and in a conclusory fashion, stated that such performance "deprived him of a fair trial." (Doc. 41). Nowhere does Petitioner address the following finding made by the trial court:

> Defendant has also failed to prove the second prong of the *Strickland* test. There is no evidence on which this Court can conclude beyond mere speculation that the outcome of the trial would have been different if Defendant had testified. Mr. Simpson's post-verdict statements were simply 'Monday morning quarterbacking.' The disadvantages of Defendant testifying (problems regarding credibility, calling so many other witnesses liars, the potential of completely alienating the jurors, etc.), could and likely would have reasonably outweighed any benefits of calling Defendant as a witness. In view of all the evidence against Defendant, it is impossible to conclude that there is a reasonable probability that Defendant's testimony would have changed the outcome of the case.

Even if the Court assumes that the trial court incorrectly concluded that defense counsel's performance was not unreasonable or deficient, Petitioner has not met his burden of establishing that the trial court's conclusion as to the prejudice component was based on an unreasonable application of federal law. Petitioner had the burden of establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The trial court determined that Willoughby had not met his burden, and Willoughby failed to challenge that determination. Accordingly, the Court denies relief on this ground.

**V. Admission of "Exemplar Mace"**

In his direct appeal, Petitioner raised a state law claim that the trial court, over defense counsel's objection, improperly admitted into evidence a weapon unconnected to the murder,

- 8 -

which resulted in great prejudice to Willoughby. (Doc. 33, Ex. II).The Arizona Court of Appeals rejected Willoughby's argument, concluding that the trial court had not abused its discretion because the mace, or steel ball, was used to illustrate the type of weapon Willoughby said he would use to kill his wife and there was some evidence connecting the weapon to the crime, thereby making the facts of this case distinguishable from those in *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (App. 1982), relied upon by Willoughby. Petitioner raised the issue again in his Petition. (Doc. 8).

As the R & R noted, a federal court generally "may not issue the writ [of habeas corpus] on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). To be entitled to habeas relief on a state law claim, the error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment."*Pulley*, 465 U.S. at 41; *see Walters*, 45 F.3d at 1357 ("A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process."); *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985) (noting that even if the admission of certain evidence was erroneous under state law, the argument is cognizable under 28 U.S.C. § 2254 only if defendant's constitutional rights were violated). Petitioner has the duty to show that the state court "committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986)).

Petitioner has not demonstrated that the admission of the exemplar mace constituted a gross abuse of discretion. The Arizona Court of Appeals noted that Ms. Patino had testified that Willoughby had a steel ball in his car and had told her that he would use it to kill his

wife. (Doc. 33, Ex. JJ).[4] The medical examiner also testified that one of the victim's head wounds could have been caused by a spherical object, but that it was very unlikely that the rest were a result of that object. Thus, this was not a case, as Petitioner suggests, in which there was absolutely no connection between the weapon introduced and the murder. At best, Petitioner argues that the prejudicial effect of the weapon outweighed any probative value, and therefore, should not have been admitted into evidence. As the court of appeals concluded, the evidence was to some degree probative on both the conspiracy and murder charges. *See Jammal*, 926 F.2d at 920 ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process."). Although the determination of whether the prejudicial effect outweighed the probative value may have been a close call, Petitioner has not established that the trial court's admission of the evidence was so arbitrary and prejudicial as to render the trial fundamentally unfair.

**IT IS THEREFORE ORDERED:**

1. Magistrate Judge Aspey's R&R (Doc. 40) is **ACCEPTED.**

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. 8) is **DISMISSED.**

3. The Clerk of the Court shall **TERMINATE** this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court declines to issue a certificate of appealability because reasonable jurists would not find the Court's procedural ruling debatable. *See Slack v.*

---

[4] When the exemplar mace was admitted, the trial judge clarified on the record for the jury that this was not actually the murder weapon, but was an object similar to the one observed in Willoughby's car.

- 10 -

1 | *McDaniel*, 529 U.S. 473, 484 (2000).

2 |     DATED this 31st day of May, 2011.

*A. Murray Snow*

/G. Murray Snow
United States District Judge